Good morning. May it please the Court, my name is Tim Green and I'm the attorney for the petitioner Richard Zucktriegel in this matter. And this is a petition for the review of a final order of removal. Mr. Zucktriegel is a native and citizen of Germany. He's also a legalization applicant or was a legalization applicant in 1987. And while he was on vacation in Germany in the year 2000, when he returned to the United States, while he was in Germany, his legalization application was denied. So when he tried to reenter the country, he was deemed at that point inadmissible and he was placed in deferred inspection. He tried to enter in Seattle. They moved his deferred inspection to the Spokane office because that was closer to his home in Leavenworth. There was a mix-up in appointments. He was then arrested, placed in removal proceedings. And this comes to the issue of the case. When he was initially placed in removal proceedings, December 27, 2000, his attorney, Mr. Daniloff, requested that he seek parole for Mr. Zucktriegel in order that Mr. Zucktriegel could apply to adjust status. The judge granted him that request and said that if he did get paperwork satisfactory to the court, the court would terminate proceedings. On January 3, 2001, parole was granted to Mr. Zucktriegel. There were a series of hearings in which Mr. Daniloff did try to get the language that would satisfy the court that, in fact, this parole would allow Mr. Zucktriegel to adjust status. At a certain point, the judge said, I'm not going to continue this matter any further, and I don't have jurisdiction to adjust status in this case. What's your best authority that the court did have? Under the theory that, is it Mr. — do we say — is it Zucktriegel? Zucktriegel, yes. Under the theory that Mr. Zucktriegel presented, what is your best authority that said that the they did have authority to adjust his status as an arriving alien? Well, my authority is 8 U.S.C. 1255A, which is that an alien who is paroled in the United States may be adjusted. And he was paroled into the United States. Now, the government says that this was a parole pursuant to a deferred inspection. Hence, it was a temporary parole. And if it's a temporary parole, then, therefore, he would be an arriving alien. And I — and at least I believe that's your theory. He would then fall under the exception in 8 Section CFR 8245.1, that he would be an arriving alien in removal proceedings. But in — but because he was on a temporary parole. But there is no evidence in this case that this was a temporary parole. It was one that's granted pursuant to a deferred inspection. This parole here was more expansive. The document allowed for multiple — although the document was restricted in time to the period when Mr. Zucktriegel was in exclusion proceedings, it allowed for multiple to apply for a waiver of his inadmissibility to do, among other things, adjust his status. So my submission is this is not a temporary parole for deferred inspection. This was a specific parole which did allow him, then, to do — to, among other things, adjust his status. What's a temporary parole? Do you agree that the I.J. had no authority to adjust his status? That's correct. If it's the strictly defined temporary parole, then that would be the case. Let me ask you this. Let's say the I.J. was correct. Are there other forms of relief available to your client? In other words, if you — You lose on that issue. Okay. So, you know, we're looking at the future, huh? And — or whatever. Well, there's a possibility that — Married, isn't he? He's married. That's correct. And, well, that's the basis on which he's trying to adjust his status. And, in fact, while these proceedings were going on, the immigration service in Seattle was acting consistent with a processing of this case towards adjustment of status. First, they granted him — even though the parole document says that he can't be granted employment authorization, the next day, the immigration service granted him parole authorization — I mean, employment authorization. Then they — he came in for interviews in order for him to adjust his status as the husband of a U.S. citizen. And he was granted — or his wife was granted the petition on his behalf, the immediate relative petition, in July. So he was processing in that direction. And — but that is the form of relief that he's looking at, which is — What happened to that process before the I.N.S.? Well, right — well, first of all, it was — to some extent, it was stymied because of the procedures here. What they did deny — I think it was in April of this year, they denied the adjustment of status. But that was in part because of the fact that the court had not found him removable. It's conceivable they would have — he would have been able to adjust. Well, how long does he have to be married to an American citizen before he can fill out one of those forms that would — Well, he's — as long as he's married to a U.S. citizen, he can immediately adjust. But the problem is — and which is the issue in this case — is that if he is an arriving alien, then in removal proceedings under the Code of Federal Regulations — Different rules apply. Pardon? Yeah. Okay. So — but what I'm stating is that this — is that he was paroled in specifically to, among other things — Why was his 87 application for legalization denied? I'm not — I'm not really clear. I mean, did you ask him, or he doesn't know, or — Well, no, no. I believe it was — I believe it was because of the moral turpitude grounds. There is an issue of moral turpitude. Pardon? You have criminal charges or something? That's correct. That's correct. Check case, was it? Pardon? Was it, yeah. Yeah, it was a check case. So, yeah, that must have been the reason why it was denied. The reason why — and I apologize for not paying close attention to that, but the reason why it didn't, in part, is because in this case, the judge didn't even reach the issue of moral turpitude because he says, I have no jurisdiction. But he did make a — a passing argument that — or not an argument, but he made a statement that he thought the equities were favorable to Mr. Zuckrigal because the — for one thing, the check situation happened years ago, back in the early 1980s. It had to do with his business — of his work in the restaurant business. Since that time, he's — with his wife, he's opened up a successful — a large and successful restaurant in Leavenworth with a German motif, and he's had no criminal record since. So the judge looked at that and said, your equities look very favorable, but I have no jurisdiction. I can't exercise it in this case. And I — and the judge was wrong on that because this isn't — Mr. Zuckrigal was paroled in to, among other things — he was not paroled in on a temporary parole, which would have put him in the category of the arrival alien ineligible to — to apply for adjustment. He was — it was a — it was a broader parole, or it wasn't — the parole wasn't under any specific category. There's nothing in the document that says this is a parole — Parole is a — you want to save a little time? Pardon? Let's save a little time. Yes. Do I — am I — am I at seven minutes? Or — Way beyond. You're down to 25 seconds, I think. Is that on the seven minutes or on the 10? You get 10 minutes aside, you're down to half a minute. Oh, okay. Well, just very briefly, I just want to say also that I felt that the — that — I think you're going to make a three-pointer right now. Is that what the government has to say? Yeah, maybe I should, and then I'll come back and see what I can do. We'll send you down to L.A. and we'll come back. May it please the Court. My name is Lisa Watts, and I represent the Attorney General in this case. To begin with, I'd like to clarify the Secretary's — or the Attorney General's position in this case. The case is very fact-specific. Mr. Zucktriegel voluntarily left the U.S. in May or June of 2000 on his own accord and gave up whatever status he had prior to that time. When he attempted to reenter the U.S. in June of 2000, he was given a temporary parole under Section D-5A on a deferred inspection, which he — which, according to the service and its notice of appearance, he never appeared for. He was never admitted into this country under that deferred inspection. Now, after that time, after he was placed in proceedings, then the January 2001 parole was issued. So this is a very distinct case. In this case, Mr. Zucktriegel was never admitted into the U.S. and is an arriving alien, and that's distinctive. Well, how did he give it up when he left? I'm sorry, I didn't hear you. He gave it all up when he left? He should have gotten, what, a... Under the administrative record here, I can see that we don't know. We do know that, based on the notice to appear, that Mr. Zucktriegel had been in this country for quite some time, I believe around 19 years at the time he left, and he was an illegal alien at the time he left. So whatever, you know, legal rights he had at that time, he voluntarily forfeited when he left the country. He was an illegal alien who applied for legalization under the 1987 Act, if I'm correct. Based on this record, yes. And then he was found, he was denied legalization, probably because of the prior check charges or whatever, and appealed. While his appeal, his case was on appeal, he left and went to Germany, as I understand it, and in the meantime, the appeal was affirmed, I guess, the decision, he denied legalization. So he was an illegal alien when he left, and he was an illegal alien when he tried to come back in. He was an, or not illegal, he was an alien seeking admission when he tried to come back in. So that's the way it sets up, isn't it? Correct. Correct, Your Honor, yes. An alien from Germany coming to the United States, and he's trying to get in. They put him in, I guess, exclusion proceedings, and in the meantime, paroled him into the country, which is typical. Is that right? Yes, the temporary parole document that was issued in January of 2000. That probably happens first, and then they put him in exclusion proceedings. I don't know. Actually, in this case, it happened the other way around. He was placed in removal proceedings by the issuance of the notice to appear. In any event, he's in removal proceedings, and while in removal proceedings, he's attempting to adjust his status, and the provision of the CFR says you can't do that. Correct. And I think it's important to recognize here that the statute and the regulations have to be read together, which in this instance operate to make Mr. Zucktriegel ineligible to apply for adjustment of status while he's in removal proceedings. That doesn't mean that these other ---- But what can he do now? Well, in the course of this record ---- What can he do? Go back to Germany and then try to ask for adjustment of status or something, or come in as the spouse of an American citizen? What do you say? What does he do? That's what other immigrants do do. They do go to the consular office. They do request that when that occurs. In the alternative, however, there were other service proceedings that counsel mentioned before that were going on at the same time. This appeal, the question before this Court, is specific with respect to the exclusion removal proceedings. Whatever alternative remedies that he could have had or he could still have aren't at issue here. I'd just like to know what's happening to these people, that's all. I mean, what can he do to straighten his life out? So you say he should go back to Germany. And then what does he do? Well, I indicated that he could within the context of this legal framework, being that he's already in removal proceedings. He could go back to Germany. Otherwise, while he's here, he has other administrative options that he has, in fact, pursued while this has been going on. And I believe the opposing counsel gave you a summary of how those have turned out for him. So this is not here for us to decide. No, it isn't, Your Honor. The I.J. that decided this issue, did the I.J. have any other issues or any other alternative theories put before that in this proceeding that we're deciding? Not that you're deciding. The only issue on appeal, and that's in the record at page 24 in the Petitioner's Brief, he specified that the only issue is whether the I.J. had correctly determined that he did not have jurisdiction to adjust the status of Mr. Zucktriegel. And I propose to you that the answer has to be yes. If you read the statute and the regulations in accord, it has to be yes here. But just to satisfy my curiosity, because it's hard for me to compartmentalize, so what – let's say you're entirely correct. So what can he do now? You're his lawyer. What would you advise him to do? It's always difficult when you ask the government to go to the other side, but – You do this all the time. You're with the Department of Justice, right? Mr. – You work for the people. I do. So tell us, what could he do? We're not playing games. No, and I'm not proposing that you should be. What I stated earlier was that Mr. Zucktriegel has a variety of options, and those really aren't the subject of today's discussion. These are other options. But what would you tell him to do? Well, with respect to this singular issue that's on appeal now, the only thing really he can do, I would say, is to comport with the terms of the removal proceedings and to take whatever steps that are necessary then to reapply for legal admission into the United States. How does he do that? I couldn't give you a roadmap of that, Your Honor, today. Now, you know, there's some reference that he was having problems back in Germany, and that was a reason given why the INS would not parole him for adjustment of status. What's that all about? To be honest, Your Honor, based on this record, I don't know what that's about. And moreover, that wasn't entertained by the immigration judge in the decision on review. To conclude, in this case, in this very narrow case, there was a reference made by trial counsel that the petitioner was having problems back in Germany as a reason why the INS would not parole him for adjustment of status.  And what's the basis for it? I don't know. Based on this record, I don't know. The government's brief refreshed my memory. We did not address that in our brief, no. Where is that statement found? The statement, I believe, was from the INS district counsel, perhaps in the letter that's in the record. I could look up. Why isn't that in the record? It's in the administrative record on appeal. Maybe I misunderstood your question. I thought your question to me was whether the government addressed that issue in its brief, and it did not. Okay. So where is that in the administrative record on appeal? Do you know? Maybe you could find out and let me know. I believe there's a reference, perhaps, in the district brief to the board, which would be in the record probably from pages 20 to 30. But I could look that up, Your Honor. Okay. Thanks. The question before you today is very narrow and I think is dispositive when you look at the regulations and the statute together in accord. Any other issue that Petitioner has posed to you today is not on appeal to this court and has not been exhausted at the administrative level. Thank you. Do I have three minutes? Well, I'm just going to ask you a question. Say you lose here today, all right? Total loss. What do you do next? Well, one thing that we would be looking at is there's a possibility. Now, my client has told me this. He may know more in this case than I do about this particular issue regarding his legalization, but I'm going to look into it. Under the, I believe it's the Catholic Social Services decision, there may have been an legalization denial was handled. So we will seek to reopen that. There's not a Catholic Social Service decision cases. Pardon? There's just not one Catholic Social Service. Okay. I spent years and years on one of those. Okay. So you don't know. I don't know, but I will look into that. One thing I just want to say that's also a concern that I raised in my brief is the fact that the immigration judge recognized the fact that Mr. Danilov was working with examinations to get a document which would allow Mr. Zucktriegel to apply for legal status with a parole document that would say specifically you can apply for adjustment. And when Mr. Danilov spoke to the trial attorney about this on September 14th, she wrote a letter to the immigration judge saying that he ethically violated the rules of professional conduct because he was talking to her client. And that's an absurdity. And I feel that this prejudiced him as far as due process because he was trying to work something out there. All right. Thanks. Thank you. The matter is then submitted.
judges: Pregerson, Thompson, Callahan